IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EMG TECHNOLOGY, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:09 CV 367 |
| | § | consolidated with 6:08cv447 |
| MICROSOFT CORPORATION, et al. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants' Motions to Transfer (Docket No. 79 in 6:09cv367 and Docket No. 209 in 6:08cv447) are before the Court. The cases have been consolidated, and the briefing is nearly identical. Accordingly, the Court considers the motions together. Having considered the parties' written submissions, the Court **DENIES** the motions.

## BACKGROUND

Defendants move the Court to transfer these cases to the Central District of California under 28 U.S.C. § 1404(a). Defendants contend that these cases have no factual connection to the Eastern District of Texas. In these two cases, EMG brought suit on two patents against twelve defendants, some of whom have been dismissed. This opinion only addresses the current parties.

The parties are located across the United States. Plaintiff EMG's principal place of business is in Los Angeles, California (Central District of California). Microsoft is located in Redmond, Washington. Southwest Airlines' principal place of business is in Dallas, Texas (Northern District of Texas). Zagat's principal place of business in is New York. Comcast has its principal place of business in Pennsylvania. American Airlines' principal place of business is in Fort Worth, Texas

1

(Northern District of Texas). Hyatt's principal place of business is in Chicago, Illinois. Finally, Barnes & Noble's principal place of business is in New York. Presumably, the parties' documents and employee witnesses are located at or near their principal places of business.

The parties identify witnesses relevant to the suit, though it is unclear from the parties' briefs whether these are third-party witnesses or remain affiliated with a party. The inventors and four of the five inventors of a priority patent are in the Central District of California. The past patent owners and patent prosecutors are also located in the Central District of California. Companies hired to commercialize the patents are also located in either the Central District of California or elsewhere in California. Some of the prior art witnesses also located in California, while others are located in Texas. EMG identifies over fifty non-party witnesses in the Eastern District of Texas.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2)

the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

### *The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have

the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

While EMG does have an office in Tyler, Texas where its documents are kept, the Court gives no weight to this fact as it appears that the documents are kept there solely to influence the Court's venue analysis. *See id*. There is no indication in the briefing that EMG has employees at this office or conducts business from this office. Accordingly, the Court gives no weight to EMG's presence in this District or location of documents in this District.

EMG is located in the Central District of California and is the only party located in that district. Microsoft and its documents are located in Washington state. Southwest Airlines and America Airlines are both located in the Northern District of Texas, adjacent to the Eastern District of Texas. The remaining parties—and their documents—are all located east of the Eastern District of Texas and substantially closer to the Eastern District of Texas than the Central District of California. Thus, the Central District of California would be more convenient for two parties and substantially less convenient than the Eastern District of Texas for the remaining six parties.

Defendants also contend that several relevant potential witnesses and their documents are located in the Central District of California. These include the inventors of the patents-in-suit and a priority patent, current and past owners of the patents-in-suit, the prosecuting attorneys, and individuals who attempted to commercialize the patents. Defendants also contend that witnesses and documents related to four prior art systems are located in the Central District of California. In

contrast, EMG argues that the Defendants themselves, not the third-party witnesses, will possess the majority of documents and physical evidence relevant to the litigation. *See In re Genentech, Inc.*, 566 F.3d at 1345 ("'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'") (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

This factor is neutral. It will be more convenient for EMG and Microsoft to transport their documents to a trial in the Central District of California. Similarly, it would be more convenient for the third-party witnesses to produce their documents in the Central District of California. However, the majority of relevant documents will likely come from the parties, not non-party witnesses. *See In re Genentech, Inc.*, 566 F.3d at 1345. It would be substantially more convenient for the remaining six parties to transport their documents to the Eastern District of Texas for trial. When the Court weighs the convenience of Microsoft, EMG, and the non-party witnesses against the convenience of the remaining six parties, this factor is neutral.

***The Availability of Compulsory Process to Secure the Attendance of Witnesses***

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

Compulsory process will be available in the Central District of California to as to the prior art and commercialization witnesses that have already been discussed. Those witnesses would not be subject to compulsory attendance at trial in the Eastern District of Texas.

5

EMG identifies fifty-one nonparty witnesses in this District with knowledge related to direct and indirect infringement and damages. EMG also identifies seven Texas employees of nonparty AT&T as witnesses and five prior art witnesses in Texas. Defendants argue that the witnesses EMG has identified in Texas are merely cellular phone retail store employees who have sold the accused devices and who are unlikely to be deposed or appear at trial in this case. EMG contends that these individuals have personal knowledge as to why customers purchase the accused devices, how customers use them, and the value customers place on the accused functionality.

In order to encourage trials to proceed efficiently, this Court typically limits the amount of time each side has at trial to put on its evidence. In this Court's experience, witnesses in a patent case usually include the inventor and/or plaintiff's corporate representative, defendants' party representatives who may testify about infringement or willfulness, and infringement, invalidity, and damages experts for each side. Occasionally, one side may present a third-party prior-art fact witness. EMG represents that its identified witnesses have relevant information regarding infringement and damages. While these witnesses are not of the type that the Court usually expects to see at trial, EMG is free to try its case in the manner it believes most beneficial and call the witnesses it believes most helpful. Moreover, in analyzing these transfer factors, the Court is not to "evaluate the significance of the identified witnesses' testimony." *See In re Genentech*, 566 F.3d 1343. Accordingly, the Court will not disregard these witnesses for the transfer analysis. These witnesses would not be subject to compulsory process in the Central District of California, but would be subject to process in this District.

This factor is neutral. Neither district would have absolute subpoena power over a majority of witnesses. Both districts would only have subpoena power over some witnesses. Both sides have

6

identified witnesses that are relevant to their case and who would not be subject to a subpoena in the other district. Accordingly, this factor does not favor transfer.

**The Cost of Attendance for Willing Witnesses**

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis

7

of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id*. (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

As previously stated, the Central District of California would be closer and therefore more convenient for the EMG and Microsoft party witnesses and the third-party prior art witnesses that Defendants have identified. The Eastern District of Texas would be closer and therefore more convenient for the remaining six parties' party witnesses and for the non-party witnesses EMG has identified in Texas. Defendants contend that because they consent to transfer to the Central District of California despite it being further from their home offices, the convenience of their witnesses should not be considered. Just as the Court will not presume that this venue is convenient for a plaintiff because it filed suit here, but considers the actual location of a plaintiff's witnesses and documents, the Court will not presume that a proposed transferee venue is convenient for defendants.

8

As with other factors, the Central District of California would be more convenient for some parties and witnesses, while this District would be more convenient for others. Accordingly, this factor is neutral.[1]

***Other Practical Problems***

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

Defendants do not identify any practical problems that affect the transfer analysis. EMG contends that the Central District of California lacks rules comparable to this District's Patent Rules and this Court's standard scheduling and discovery orders. EMG argues that without these rules and procedures, readying this case for trial would be more difficult, time-consuming, and expensive in the Central District of California than in the Eastern District of Texas.

This factor does not support transfer.

***The Administrative Difficulties Flowing from Court Congestion***

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id*.

The parties agree that this factor is neutral.

---

[1] To be clear, this Court does not consider itself convenient because it is centrally located to all the witnesses. *Cf. In re Genentech*, 566 F.3d at 1344 (favoring the court's location as central to all of the witnesses is improper in cases where no potential witnesses are residents of the court's state). Two parties are located just outside this District's boundaries, and EMG has identified a substantial number of witnesses in this District and in Texas.

9

***The Local Interest in Having Localized Interests Decided at Home***

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

The Central District of California has a particularized interest in this case. It is EMG's home and where the patented technology was developed. It is also home to where several pieces of prior art were developed.

The Eastern District of Texas also has some interest in this case. Two major defendants—Southwest Airlines and American Airlines—neighbor this District, and it is likely that residents of this District work for either company or have other vested interests in either company. Additionally, EMG has identified numerous witnesses in this District with direct knowledge of the facts of this case.

In considering the two District's interest in this litigation, the Central District of California's interest is more direct and concrete and outweighs this District's interest. Accordingly, this factor slightly favors transfer.

*The Familiarity of the Forum with the Law that Will Govern the Case* and *Avoidance of Unnecessary Problems of Conflict of Laws*

These factors are generally not applicable in patent cases. The parties agree that these factors are neutral.

## CONCLUSION

In considering the transfer factors, only the local interest factor slightly favors transfer. All other factors are neutral in light of the location of the parties and identified witnesses. Accordingly, Defendants have not shown that transfer is clearly warranted for the parties' and witnesses' convenience. The Court **DENIES** the motions to transfer.

**So ORDERED and SIGNED this 28th day of September, 2010.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**